UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

COST CUTTING CONSULTANT, INC.,

                 Plaintiff,

     -against-

PARCEL MANAGEMENT AUDITING AND
CONSULTING INC. AND RICH MICHALS, JR.,

                 Defendants.

**MEMORANDUM & ORDER
19-CV-03756 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Cost Cutting Consultant brings this action alleging breach of contract and related claims against Defendant Parcel Management Auditing and Consulting, Inc. ("PMAC"). PMAC asserts a number of counterclaims, including copyright infringement and other claims, and third-party claims against Yisrael Markowitz. Before the court are: (1) PMAC's motion for summary judgment on all of Cost Cutting's claims;(2) PMAC's motion for partial summary judgment on its copyright infringement counterclaim and third-party claim against Cost Cutting and Yisrael Markowitz; (3) Cost Cutting's cross-motion for summary judgment on its breach of contract claim; and (4) Cost-Cutting's cross-motion to dismiss each of PMAC's counterclaims and third-party claims. For the following reasons, PMAC's motion for summary judgment on all of Cost Cutting's claims is GRANTED in part and DENIED in part; PMAC's motion for partial summary judgment on its copyright counterclaim and third-party claim is DENIED; Cost Cutting's cross-motion for summary judgment on its contract claim is DENIED; and Cost Cutting's cross-motion to dismiss all of PMAC's counterclaims is DENIED.

## I.   BACKGROUND

### A.   Facts

The court constructs the following statement of facts from the parties' Local Rule 56.1 statements and the admissible evidence they have submitted. (*See* Cost Cutting Rule 56.1 Statement ("Cost Cutting 56.1") (Dkt. 53); PMAC Rule 56.1 Statement ("PMAC 56.1") (Dkt. 57); Cost Cutting Rule 56.1 Counterstatement (Dkt. 61) ("Cost Cutting Counter"); PMAC Rule 56.1 Counterstatement (Dkt. 63-5) ("PMAC Counter").) Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the non-moving party if its assertion is supported by evidence in the record. All evidence is construed in the light most favorable to the non-moving party with "all reasonable inferences" drawn in its favor. *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).[1]

#### 1.   The Agreement

Defendant PMAC audits FedEx and UPS on behalf of manufacturers and other high-volume shippers. (Cost Cutting Counter ¶ 2.) The company was founded by Richard Michals, Jr. (Michals) and his father in 1998. (*Id.* ¶ 1.) By determining when FedEx and UPS fail to timely deliver packages and freight, the audits generate savings for PMAC's clients. (*Id.* ¶¶ 2-3.) PMAC uses proprietary "Parcel Ally" software to perform the audits. (*Id.* ¶ 4.)

In 2011, Yisrael Markowitz founded a similar company called Cost Cutting Consultant, also providing delivery auditing services. (*Id.* ¶¶ 11, 12.) Because Markowitz was relatively inexperienced in the industry, he first partnered with PMAC to

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

perform some services behind the scenes – entering into, essentially, a white labeling agreement. (*Id.* ¶¶ 14-15; PMAC Counter ¶¶ 2-3.)

Pursuant to the Agreement, PMAC would audit Cost Cutting's customers on Cost Cutting's behalf. (Cost Cutting Counter ¶ 16; PMAC Counter ¶ 3.) The Agreement provided that the audits would be "undertaken on a Private Label Basis," such that "all services performed for, deliverables provided to, and communications undertaken with respect to [Cost Cutting]'s Customers [would] be done on behalf of [Cost Cutting] and only in [Cost Cutting]'s name." (PMAC Counter ¶ 3; Client Services Agreement (Dkt. 64-9) at 1-2.) The Agreement defined Cost Cutting's "Customers" as "those end-users of delivery services that retain [Cost Cutting] during the term of this Agreement to perform delivery fee recovery services for such customers, and that [Cost Cutting] submits to PMAC to provide Services." (PMAC Counter ¶ 3; Client Services Agreement at 1.) Section Six of the Agreement provided:

> During the Initial Term and during any Renewal Terms of this Agreement, and continuing until the date that is two (2) years after the date on which PMAC has first ceased performing Services for any and all of [Cost Cutting]'s Customers, PMAC agrees not to attempt in any manner to solicit business from, and agrees not to perform any Services for, any [Cost Cutting]'s Customer for whom PMAC had provided Services on behalf of [Cost Cutting] pursuant to this Agreement.

> PMAC and [Cost Cutting] agree that [Cost Cutting] will suffer irreparable harm if PMAC breaches the provisions set forth in this Section 6 and that monetary damages would be extremely difficult to ascertain and would not adequately compensate [Cost Cutting] for the harm which would result from such a breach. Therefore, [Cost Cutting] shall be entitled to an immediate injunction to

restrain any continuing violation of this Agreement. In addition to injunctive relief, [Cost Cutting] may pursue such other remedies for such breach or threatened breach, including an action for damages, as may be available to [Cost Cutting] at law or in equity. [Cost Cutting] shall also be entitled to an award of its reasonable attorneys' fees and expenses incurred in enforcing the provisions of this Section 6 if [Cost Cutting] substantially prevails in any action brought to enforce this section 6.

(PMAC Counter ¶ 5; Client Services Agreement at 3.)

PMAC and Cost Cutting worked together for four years, and Michals became something of a mentor to Markowitz. (Cost Cutting Counter ¶¶ 23, 36.) Among the companies PMAC performed auditing for during this time period were DC Dental Supplies and Caroline's Cakes. (PMAC Counter ¶ 8.) Cost Cutting asserts that DC Dental and Caroline's Cakes were Cost Cutting's customers during that time period, because PMAC only audited them on Cost Cutting's behalf. (Cost Cutting 56.1 ¶ 8.) PMAC maintains that these accounts were PMAC's customers and have never been Cost Cutting's customers. (PMAC Counter ¶ 8.)

2. DC Dental

At some point prior to 2011, it is undisputed that DC Dental hired PMAC to perform delivery auditing services. (*See* PMAC Counter ¶ 13; Markowitz Dep. (Dkt. 58-1) at 60:20-61:1.) The parties dispute the duration of the relationship. Michals testified that DC Dental always retained PMAC to audit its UPS deliveries. (Michals Dep. at 38:2-39:20.) Markowitz testified that DC Dental instead terminated its relationship with PMAC prior to 2011 due to perceived overbilling. (Markowitz Dep. at 67:2-70:2.) The parties agree, however, that at some point during the duration of the Agreement, Markowitz met with a DC Dental executive and, as a result, some business relationship formed between Cost Cutting

4

Consultant and DC Dental. The parties disagree as to the scope and character of that relationship. Markowitz testified that, in 2011, having already cut ties with PMAC, DC Dental retained Cost Cutting. (*Id.*) Cost Cutting then apparently submitted DC Dental back to PMAC to perform white label services, making DC Dental a Cost Cutting "Customer" under the Agreement. (*Id.* at 74:7-75:8.) Michals concedes only that, in 2013, Markowitz landed DC Dental's FedEx account, which PMAC had never serviced. (Michals Dep. at 38:2-39:16.) Michals testified that PMAC audited the FedEx account for Cost Cutting, and allowed Cost Cutting to bill DC Dental, only on the express condition that DC Dental remain *PMAC's* client. (*Id.* at 39:2-20.) It is disputed, therefore, whether DC Dental was serviced by PMAC under the auspices of the Agreement, or according to some other arrangement.

### 3. Caroline's Cakes

Around this time, Markowitz also identified Caroline's Cakes as a potential customer. (Markowitz Dep. at 93:1-9; Michals Dep. at 39:16-18.) Markowitz testified that Caroline's Cakes initially retained Cost Cutting (Markowitz Dep. at 94:24-95:5; 97:16-20); on that point, Michals equivocates. (Michals Dep. at 39:16-20, 72:17-19.) To close the deal, Markowitz and Cost Cutting recruited PMAC's help, as evidenced by an email sent by Markowitz to Michals in 2012: "can you please call Richard [Reutter] of carolinescakes.com after 530 when he will pick up the phone? He does $1,000,000 UPS & does not yet have an auditor? thank you." (Michals Decl. (Ex. 4) (Dkt. 59) at ECF p. 19.) At some point thereafter, Caroline's Cakes changed its UPS password, blocking Markowitz's access. (Markowitz Dep. at 97:20-98:6; Michals Decl. at ECF p. 25.) Unable to reach Reutter via phone after trying several times, Markowitz again asked Michals to try calling. (Michals Decl. at ECF p. 25.) Michals, who testified that

Markowitz "did not speak [Reutter's] language and couldn't answer a lot of the questions that he had," was able to talk to Reutter. (Michals Dep. at 72:17-73:15.) In what Markowitz now deems a breach of the Agreement (Markowitz Dep. at 98:14-99:14), Michals sent Reutter a generic PMAC contract, naming Caroline's Cakes as a party and containing a number of terms. (Michals Decl. at ECF pp. 21-23.) The contract provided, "[t]here is no need to sign anything. Please reply back to my email confirming your receipt and acknowledgement with the above information" (*id.* at 22),[2] to which Reutter responded, "Thank you for your e-mail. Please call me when you have a chance to discuss the login information." (*Id.* at 21) Even after this equivocal exchange, Michals admittedly continued to let Cost Cutting bill Caroline's Cakes. (Michals Dep. at 70:12-19; *see* Invoices (Dkt. 68) at ECF pp. 1-2.)

In a letter dated March 23, 2015, (Mar. 23, 2015 Ltr. (Dkt. 58-6), the "Withdrawal Letter"), Cost Cutting informed PMAC that, pursuant to Section 5 of the Agreement, Cost Cutting would be ending white labeling for four of its Customers and auditing them "internally." (*Id.*) However, the letter noted that PMAC would continue providing white labeling services for at least four other clients: "Please note that for now the following will remain with PMAC. Carolines & Daily Steals since you closed them. DC Dental since it was your client prior to me winning it back. Freeda until their three year contract negotiation deal runs out[.]" (*Id.*)

### 4. The Websites

Before PMAC and Cost Cutting cut ties, Michals let Markowitz use the code for PMAC's website to create a similar site for Cost Cutting, and Markowitz did so. (Cost Cutting Counter ¶¶ 26, 28.) PMAC claims that Michals told Markowitz he could only use

---

[2] The "above information" apparently refers to Caroline's Cakes' "[UPS.com] user name and password." (*Id.* at ECF p. 21.)

PMAC's code while PMAC and Cost Cutting worked together. (PMAC 56.1 ¶ 29.) Cost Cutting denies that any qualification was communicated to Markowitz regarding his use of the code. (Cost Cutting Counter ¶ 29).

### B.  Procedural History

Cost Cutting filed suit on May 30, 2019, in New York State Supreme Court. (Compl. (Dkt. 2-1).) Cost Cutting's complaint named PMAC and Michals as defendants, alleged breach of contract, unfair competition, conversion, and tortious interference with contract, and requested damages and injunctive relief. On June 27, 2019, PMAC and Michals removed the action to this court. (Not. of Rem. (Dkt. 1).) On July 8, 2019, Defendants answered the complaint, denying Cost Cutting's allegations and filing counterclaims for trademark infringement, trade dress infringement, false advertising, copyright infringement, deceptive trade practices, breach of contract, unfair competition, breach of fiduciary duty, unjust enrichment, and an accounting. (*See* Answer (Dkt. 7).) Cost Cutting answered. (Cost Cutting Answer (Dkt. 12).) On December 13, 2019, PMAC filed a third-party complaint naming Markowitz as a third-party defendant, alleging trademark infringement, trade dress infringement, false advertising, copyright infringement, deceptive trade practices, and unfair competition. (Third Party Compl. (Dkt. 19).) On February 25, 2020, Markowitz answered. (Markowitz Answer (Dkt. 27).) On November 18, 2020, the claims against defendant Michals were dismissed by the court with prejudice, as stipulated by the parties. (Stipulation of Dismissal (Dkt. 44).)

On April 5, 2021, PMAC filed a motion pursuant to Federal Rule of Civil Procedure 56, requesting (a) dismissal of Cost Cutting's claims, (b) partial summary judgment on PMAC's counterclaim for copyright infringement against Cost Cutting, and (c) partial summary judgment on PMAC's third-party claim for copyright infringement against Markowitz. (PMAC Mot. (Dkt. 56).) In its

brief, PMAC argues that the evidence does not support a finding that DC Dental and Caroline's Cakes were Cost Cutting's customers and that, in any case, Cost Cutting expressly allowed PMAC to "keep" the accounts in the Withdrawal Letter. (PMAC Memo (Dkt. 56) at 11-15.) Cost Cutting filed a brief in opposition and filed a cross-motion for (a) summary judgment on its breach of contract claim, and (b) dismissal of PMAC's counterclaims under Fed. R. Civ. P. 12(b)(6). (Cost Cutting Mot. (Dkt. 64).)

## II.   LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir.

2012). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

## III.  DISCUSSION

### A.  Cost Cutting's Breach of Contract Claim

Cost Cutting's complaint alleged that PMAC "breached the non-solicitation provision of the subject Agreement by contacting and soliciting the following clients: a. D.C. Dental Supplies[;] b. Caroline's Cakes[.]" (Compl. ¶ 14.) PMAC moved for summary judgment on Cost Cutting's breach of contract claim on the basis that it could not have breached the contract by soliciting DC Dental and Caroline's Cakes because DC Dental and Caroline's Cakes were *always* PMAC's clients and were *never* Cost Cutting's clients. (PMAC Mem. (Dkt. 56) at 11-15.) Cost Cutting responds that DC Dental and Caroline's Cakes were in fact its clients. (Cost Cutting 56.1 ¶¶ 7-8.)

Jurisdiction in this case is premised on diversity of citizenship, and the parties all rely on New York law, the law of the forum state, in their submissions. It is therefore appropriate for this court to apply New York law. *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, at 121 n.5 (2d Cir. 1998). "[T]o prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000). "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent . . . . [A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of

its terms." *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569 (N.Y. 2002). The parties do not dispute that the Agreement was a binding contract, and that Section Six prohibited PMAC from "solicit[ing] business from" or "perform[ing] any Services for" any of Cost Cutting's customers for the duration of the Agreement and for two years thereafter. (PMAC Counter ¶ 5; Client Services Agreement at 3.) Moreover, PMAC admits that, after Markowitz terminated the Agreement, PMAC has performed services for DC Dental and Caroline's Cakes without going through Cost Cutting. (PMAC 56.1 Counter ¶ 10.)[3] That the customers ended up with PMAC gives rise to Cost Cutting's allegation that PMAC breached the Agreement's non-solicitation provision. (Cost Cutting Mem. (Dkt. 63-1) at 7-9.) But PMAC argues that Section Six was not breached, according to PMAC, because the agreement simply never covered DC Dental and Caroline's Cakes, who always were PMAC's clients. (PMAC Mem at 11-15; *see* PMAC Opp. (Dkt. 64-12) at 4-8.) Thus, in the context of PMAC's motion for summary judgment, Cost Cutting's breach of contract claim hinges on whether DC Dental and Caroline's Cakes were in fact Cost Cutting's "Customers" – a term specifically defined by the Agreement as "those end-users of delivery services that retain [Cost Cutting] during the term of this Agreement to perform delivery fee recovery services for such customers, and that [Cost Cutting] submits to PMAC to provide Services." (Cost Cutting 56.1 ¶ 3; Client Services Agreement at 1.)

As has been noted, Markowitz testified that DC Dental and Caroline's Cakes were Cost Cutting Customers, while PMAC's submissions generally maintain that they were PMAC customers.

---

[3] The parties disagree as to when the Agreement was terminated, whether in 2015 or later. (*See* PMAC Mem. at 19; Markowitz Dep. at 36:23-37:1; Michals Dep. at 61:10-62:15.) But all agree that, after the termination (whenever it occurred), DC Dental and Caroline's Cakes employed PMAC alone.

At times, however, Michals's testimony flatly contradicts PMAC's position. Michals described DC Dental and Caroline's Cakes as "jointly ours," in the sense that they were "property of PMAC and Cost Cutting Consultants simultaneously." (Michals Dep. at 67:10-15.) He also called Caroline's Cakes "an account that became a shared account with us because Yisrael couldn't communicate with the guy." (*Id*. at 72:17-20.) That statement not only admits that Caroline's Cakes was a "shared account," but also suggests that before it "became" a shared account, Caroline's Cakes was Cost Cutting's alone.

Indeed, it is difficult for Michals to claim that DC Dental or Caroline's Cakes were somehow entirely exempted from the terms of the white labeling Agreement between Cost Cutting and PMAC, because a 2013 email and the 2015 Withdrawal Letter provide contemporaneous, documentary evidence that suggests both clients were, in fact, governed by the Agreement. In 2013, Markowitz sent Michals an email asking, "Since you have DC Dental UPS; I would like you to take over their FedEx." (Michals Decl. (Ex. 7) at ECF p. 27.) Markowitz and Michals interpret this email to accord with their own version of the underlying facts. Markowitz testified that he meant: *since you already provide white labeling for me on DC Dental's UPS account, I would like you to also provide those services for me on their FedEx account*. (Markowitz Dep. at 142:6-43:22.) But according to Michals, Markowitz was asking: *since DC Dental is already a PMAC client, I would like you to service their FedEx account as well*. (Michals Dep. at 39:4-9.) Of these interpretations, Michals's strains credulity: It suggests that Markowitz was simply giving ownership of the FedEx account over to PMAC, for nothing in exchange.

The parties also present similarly conflicting interpretations of Markowitz's note, in the 2015 Withdrawal Letter, that "for now the following will remain with PMAC. Carolines & Daily Steals since you closed them. DC Dental since it was your client prior to

me winning it back." (Mar. 23, 2015 Ltr.) According to PMAC, this letter fully terminated the business relationship between Cost Cutting and PMAC, and conceded that, going forward, Caroline's Cakes and DC Dental would "remain" PMAC clients. (PMAC Mem. at 7.) By contrast, Markowitz testified that the language meant only "that I'm terminating his [white labeling] services as per all clients [except for those] specified in the letter," *i.e.*, DC Dental, Caroline's Cakes, and two other clients. (Markowitz Dep. at 178.) The parties draw additional inferences from this language in the letter. To Michals, insofar as the letter concedes that DC Dental "was [PMAC's] client" originally, and that Michals "closed" Caroline's Cakes, the letter tends to show that these accounts *totally belong* to PMAC, since, according to Michals, "in this industry it is an unwritten rule that if somebody has an account that's within the same umbrella . . . it belongs to whoever closed it first." (Michals Dep. at 38:14-39.9; PMAC Mem. at 7, 15.) Conversely, Cost Cutting reads the phrase "it *was* your client prior to me *winning it back*" as tending to support its claim that DC Dental cut ties with PMAC and thereafter became a Cost Cutting client. (Cost Cutting Opp. (Dkt. 60) at 5.) And the qualification, "*for now* the following will remain with PMAC," substantiates Markowitz's testimony that "I reserved my right under our contract to take [DC Dental and Caroline's Cakes back in-house] at a further date." (Markowitz Dep. at 178:6-7.) Finally, Cost Cutting submitted invoices showing that it had billed DC Dental in July 2013 and in February 2016 and that it had billed Caroline's Cakes in October 2012 and May 2015, casting further doubt on PMAC's contention that these accounts belonged to PMAC alone.

Because the Agreement defined Cost Cutting's "Customers" as "those end-users of delivery services that retain [Cost Cutting] during the term of this Agreement to perform delivery fee recovery services for such customers, and that [Cost Cutting] submits

to PMAC to provide Services," the evidence adduced allows a reasonable jury to find that DC Dental and Caroline's Cakes retained Cost Cutting and that Cost Cutting submitted them to PMAC to provide services. (Cost Cutting 56.1 ¶ 3; Client Services Agreement at 1.) Such an inference would permit the jury to conclude that the Agreement had been breached. As such, PMAC's motion for summary judgment on Cost Cutting's breach of contract claim is DENIED.

Nevertheless, this evidence is not so overwhelming as to justify summary judgment in Cost Cutting's favor. Factual uncertainty remains as to whether the Agreement indeed governed these accounts since a reasonable jury could find, based on the evidence in the record, that PMAC audited these accounts on its own initiative and then "submitted" them to Cost Cutting exclusively for billing purposes – "as a courtesy," in Michals's words. (Michals Dep. at 69:18-21; Client Services Agreement at 1.) Under those circumstances, the accounts might not be Cost Cutting "Customers," because PMAC "submitted" them to Cost Cutting, not vice versa. Additionally, the fact that Cost Cutting lacked written contracts with DC Dental or Caroline's Cakes, and the fact that PMAC at least *sent* contracts to these companies – who apparently acknowledged them – could allow a reasonable jury to find that DC Dental and Caroline's Cakes did not "retain" Cost Cutting under the Agreement (but, rather, that they only "retained" PMAC). (*See* Michals Decl. (Ex. 2) at ECF pp. 13-14, (Ex. 5) at ECF pp. 21-23.) Because these issues of material fact still exist, Cost Cutting's motion for summary judgment on its breach of contract claim is also DENIED.

### B.   Cost Cutting's Tort Claims

The court next considers PMAC's motion for summary judgment on Cost Cutting's unfair competition, conversion, and tortious interference with contract claims. These clams all sound in tort. Under New York law, "a breach of contract will not give rise to a

tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012); *see also Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003). Thus, if a plaintiff's "claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische Landesbank*, 692 F.3d at 58. "Put another way," a tort claim must be dismissed as duplicative when "there [i]s no injury alleged . . . that a separate [tort] claim would include that is not already encompassed in [the] contract claim." *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 462 (N.Y. 2018). By contrast, if "an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Bayerische Landesbank*, 692 F.3d at 58. For example, "[w]hen a defendant breaches its contract with a plaintiff, that defendant may also breach an independent duty in tort if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." *Carvel*, 350 F.3d at 16.

### 1.  Unfair Competition

PMAC argues that Cost Cutting's unfair competition claim should be dismissed because "[t]here is no evidence that PMAC misappropriated anything" nor that PMAC acted in bad faith. (PMAC Mem. at 15-16.) Cost Cutting responds by pointing to Section 6 of the Agreement and asserting that "[d]efendants actively misappropriated D.C. Dental and Caroline's Cakes, despite a clear prohibition against doing so in the Contract." (Cost Cutting Opp. at 7.) Cost Cutting also alleged that PMAC competed unfairly insofar as it attempted to "destroy [Cost Cutting] in every conceivable respect." (Compl. ¶ 28.)

Under New York law, "the essence of an unfair competition claim . . . is that the defendant has misappropriated the labors and expenditures of another" and has done so in bad faith. *Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir. 1980). "As numerous courts have noted, the scope of the unfair competition action is generally limited to three categories: passing off one's goods as those of another, engaging in activities solely to destroy a rival, and using methods themselves independently illegal." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, No. 09-CV-3259 (JG) (RML), 2011 WL 1882845, at *7 (E.D.N.Y. May 17, 2011) (collecting cases). Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim is dismissed as duplicative of the breach claim. *See, e.g.*, *ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13-CV-8645 (KMK), 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017) (granting defendants' motion for summary judgement where plaintiff's unfair competition claim was premised solely on defendants' breach of confidentiality agreements); *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (dismissing plaintiffs' unfair competition claim where it was "entirely based on alleged conduct that is proscribed by the 2010 NDA – namely disclosure and use of information that was protected by the 2010 NDA" – and plaintiffs had not alleged that defendant "had any duty to them independent of the 2010 NDA, nor . . . alleged circumstances extraneous to that contract in support of their non-contract claims"); *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14-CV-6294 (LTS) (HBP), 2015 WL 5008762, at *5-6 (S.D.N.Y. Aug. 24, 2015) (dismissing unfair competition counterclaim as duplicative of breach of contract counterclaim where the "only basis for the claim that it ha[d] been wronged is the contractual relationship granting it the right to use RCA trademarks," and "[a]bsent that contractual right, it

15

would have no claim at all to use of the trademarks and no legal ground for complaint regarding RCA's licensing of the trademarks to others[ ]"). Thus, Cost Cutting can only withstand PMAC's motion for summary judgment by providing evidence sufficient to support a finding that PMAC competed unfairly in some way beyond breaching the non-solicitation provision of the Agreement.

In opposing PMAC's motion for summary judgment on its unfair competition claim, Cost Cutting points to Section 6 of the Agreement and asserts that "[d]efendants actively misappropriated D.C. Dental and Caroline's Cakes, despite a clear prohibition against doing so in the Contract." (Cost Cutting Opp. at 7.) This argument merely restates Cost Cutting's breach of contract claim, so it cannot constitute the basis of an unfair competition claim. The only additional evidence in the record possibly relevant to Cost Cutting's unfair competition claim pertains to messages in which Michals might be understood as threatening to destroy Cost Cutting. According to Markowitz, when Cost Cutting attempted to take its customers in-house, removing them from the white labeling arrangement with PMAC, Michals "text[ed] me aggressive emails threatening to take my business down if I do any contractual rights. . . . Aggressive language, aggressive texts, aggressive financial damage." (Markowitz Dep. at 223:16-224:2.) During discovery, Cost Cutting failed to produce those messages – even though opposing counsel requested them – but Cost Cutting's counsel read one of them into the record. Addressed to Markowitz's then-counsel Michael Wieser, Michals's email apparently read: "[T]here was no private label, your little client is lying to you. . . . [T]his stupidity is hilarious. . . . Mike, better stick with hometown fights; my counsel is copied; she'll annihilate you and lil' Izzy! Want a fight Izzy and Mikey boy? I have money I have no idea what to do with sometimes. . . . I'm calling Richard [Reutter of Caroline's Cakes] this afternoon just for fun!" (Michals Dep. at 69:7-70:19.) Markowitz testified that

another message threatened "I'm going to call up all your clients and take them away from you." (Markowitz Dep. at 57:25-58:8.) These messages led Markowitz to believe that Michals was acting out of spite, rather than financial concern, when he solicited Cost Cutting's customers. (*Id.* at 57:13-58:24.) Indeed, Michals testified that the accounts he allegedly solicited, DC Dental and Caroline's Cakes, were financially insignificant to PMAC, saying "we're talking about pennies here." (Michals Dep. at 64:17-24.) And notably, Michals's threats occurred in the context of what Markowitz characterizes as an emotionally abusive relationship.[4]

This evidence would allow a reasonable jury to find that PMAC engaged in malicious activities designed to "annihilate" Cost Cutting, its competitor. *See Coca-Cola N. Am.*, , 2011 WL 1882845, at *7 (noting that common law unfair competition claim may be available where defendant "engag[ed] in activities solely to destroy a rival"). The evidence – especially Michals's threat to "annihilate" Cost Cutting by, among other things, calling up Richard Reutter of Caroline's Cakes – would also allow a reasonable jury to find that PMAC maliciously interfered with Cost Cutting's good will. *See Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co., Inc.*, 614 F.2d 832, 842 (2d Cir. 1980) (unfair competition claim

---

[4] Markowitz testified that in general, while they worked together, Michals consistently "was rude to me on the phone" and "made fun of me, like I was some little child and told me I was referred to as the child of the office." (Markowitz Dep. at 223:8-13.) Indeed, email correspondence in the record shows that Michals referred to Markowitz as "son" or "son of mine" (Feb. 12, 2012 Email (Dkt. 58-3); Nov. 18, 2012 Email (Dkt. 58-4)), and Markowitz says this "wasn't necessarily endearing, putting me down as a child and he was the adult as if he knew all, I didn't have an opinion on these matters." (Markowitz Dep. at 225:1-5.) Markowitz related that he was "laughed at" by Michals and his brother when he brought "mistakes in [PMAC's] systems" to their attention. (*Id.* at 38:3-24.) He also testified that Michals made a derogatory comment about his kosher diet and once referred to him as his "token Jew." (*Id.* at 225:9-226:24.)

is available in New York where defendant "malicious[ly] . . . in-
terfere[d] with good will"). Under these circumstances, PMAC's
motion for summary judgment on Cost Cutting's unfair competi-
tion claim is DENIED.

2.   Conversion

PMAC argues that Cost Cutting's conversion claim fails as dupli-
cative of its breach of contract claim, since it is premised only on
the solicitation of DC Dental and Caroline's Cakes. (PMAC Mem.
at 16-17.) Cost Cutting responds that its conversion claim is not
duplicative, citing allegations in its complaint that PMAC con-
verted Cost Cutting's "customer lists, intellectual property and
proprietary information." (Cost Cutting Opp. at 8-9.) These alle-
gations do not constitute evidence, and there is nothing in the
record to support them. "Even if a plaintiff meets all of the ele-
ments of a conversion claim, the claim will still be dismissed if it
is duplicative of a breach of contract claim." *AD Rendon Comm's,
Inc. v. Lumina Ams., Inc.*, No. 04-CV-8832, 2007 WL 2962591, at
*4 (S.D.N.Y. Oct. 10, 2007); *see Command Cinema Corp. v. VCA
Labs, Inc.,* 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) ("A conver-
sion claim may only succeed if the party alleges a wrong that is
distinct from any contractual obligations."); *Alliance Grp. Servs.,
Inc. v. Grassi & Co.,* 406 F. Supp. 2d 157, 170 (D. Conn. 2005)
("Where plaintiffs have merely repeated . . . their breach of con-
tract claims and called them conversions, the conversion claims
must fail."); *Wechsler v. Hunt Health Sys., Ltd.,* 330 F. Supp. 2d
383, 431 (S.D.N.Y. 2004) (noting that a conversion claim may be
dismissed as duplicative of a contract claim even though the con-
version claim "satisf[ies] the technical elements of that tort");
*Rolls-Royce Motor Cars, Inc. v. Schudroff,* 929 F. Supp. 117, 124
(S.D.N.Y. 1996) (a conversion claim will "be deemed redundant
when damages are merely being sought for breach of contract");
*Richbell Info. Servs., Inc. v. Jupiter Partners,* 765 N.Y.S.2d 575,

590 (1st Dep't 2003) (holding that plaintiff's action for conversion, "while satisfying the technical elements of that tort . . . , was properly dismissed as duplicative"). The record is devoid of any evidence to support a finding that PMAC converted any property other than the DC Dental and Caroline's Cakes accounts, which is conduct covered by Cost Cutting's breach of contract claim. As such, PMAC's motion for summary judgment on Cost Cutting's conversion claim is GRANTED.

### 3.   Tortious Interference with Contract

PMAC argues that Cost Cutting's tortious interference with contract claim fails because "PMAC did not cause DC Dental or Caroline's Cakes to breach any contract with Cost Cutting," as "[n]o such contract ever existed" because these customers were actually "PMAC clients"; and because Cost Cutting did not establish "malicious, fraudulent, or illegal conduct" on the part of PMAC. (PMAC Mem. at 17-18.) These arguments are mostly *non sequiturs*. Cost Cutting's tortious interference with contract claim, as explained in its complaint and in its opposition memorandum, is predicated on the allegation that *Michals* "caused [PMAC] to breach the subject Agreement and more specifically the non-competition and non-solicitation provision contained therein." (Compl. ¶¶ 36-40; Cost Cutting Opp. at 9-10.) Of course, the action against defendant Michals was already dismissed with prejudice, by stipulation, so he cannot be held liable for tortious interference with a contract. (*See generally* Stipulation of Dismissal.) Moreover, PMAC cannot be said to have tortiously interfered with the Agreement, to which it was a party, because "[d]efendants cannot, as a matter of law, have tortiously interfered with their own contract." *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y. 2018), *aff'd.* 751 F. App'x 69 (2d Cir. 2018). Accordingly, PMAC's motion for summary judgment on Cost Cutting's tortious interference with contract claim is GRANTED.

### C.   PMAC's Copyright Infringement Counterclaim

PMAC argues that it is entitled to summary judgment on its copyright infringement counterclaim against Cost Cutting and third-party claim against Markowitz. "In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020). Thus, to warrant an award of summary judgment, PMAC must show that there is no genuine dispute of material fact as to whether Cost Cutting made *unauthorized* use of the site code. Both of PMAC's claims are based on the allegation that Markowitz and Cost Cutting made "unauthorized use of PMAC's site code for getmyrefund-now.com . . . after Markowitz terminated the Agreement in 2015." (PMAC Mem. at 19.) PMAC concedes that "Michals allowed Markowitz to use PMAC's intellectual property for free [and] directed PMAC's web designer to give Markowitz the code for PMAC's website so Markowitz could create a similar site for Cost Cutting." (PMAC 56.1 ¶¶ 26, 28). And the parties do not dispute that Cost Cutting thereafter used PMAC's site code for its Cost Cutting Consultant domain and for its getmyrefund-now.com domain, continuing to use the code even after sending the Withdrawal Letter in 2015. However, while Cost Cutting maintains that these uses were authorized, PMAC claims that "there is no dispute that Michals . . . did not authorize . . . Markowitz's use of the source code after the [Withdrawal] Letter or Markowitz's use of the source code for getmyrefundnow.com." (PMAC Mem. at 20.)

Michals testimony seems to equivocate regarding Markowitz's authorization to use the source code. At first, he suggests that he gave the source code to Markowitz as an outright gift:

> [Markowitz] didn't have a website and I told him – you know, I keep going back to this, I liked him. . . . I said [to Markowitz], "Listen, man, why spend extra money on a

> website[?]" . . . . "Why don't I just *give you the code to*
> *our website* and you can have your web developer just
> change the logo around and *you don't have to pay for a*
> *website*. You just pay for some modifications." And he
> did it. I mean, it's no skin off my back. *So of course, yes,*
> *I gave it to him. I said knock yourself out.* And I've never
> done that for anybody else.

(Michals Dep. at 51:12-52:9 (emphasis added).) Cost Cutting's
counsel, showing his hand, responded by announcing that "you
do not cease to amaze me again and again because [you have
contradicted] the crux of your claim against Yisrael and Cost Cut-
ting." (*Id.* at 53:12-19.) Michals then walked back his apparent
admission and testified that, at the time, he told Markowitz that
he could only use the code "as long as you're driving business to
us and you're a part of our team. If that ends, so does your per-
mission to use the website in any circumstance whatsoever." (*Id.*
at 53:20-54:7.) Markowitz's testimony, on the other hand, main-
tained that "there was never any qualification[] made on" his use
of the website. (Markowitz Dep. at 243:12.) And although Cost
Cutting did continue to use PMAC's source code openly on its
websites after the parties stopped working together, there is no
evidence that Michals or PMAC protested at any point prior to
filing counterclaims in this suit. (PMAC 56.1 ¶ 34.) To the con-
trary, PMAC emphasizes that Markowitz and Michals met
amicably in November 2018. (*Id.* ¶¶ 41-42.) As such, issues of
material fact exist as to whether Michals told Markowitz that he
could only use the source code so long as PMAC and Cost Cutting
worked together and only for Cost Cutting's own domain rather
than for a subsidiary domain like getmyrefundnow.com. Accord-
ingly, PMAC's motion for summary judgment on its copyright
infringement counterclaim and third-party claim is DENIED.

### D. PMAC's Other Counterclaims

PMAC has not moved for summary judgment on its hodgepodge of other counterclaims: trademark infringement, trade dress infringement, false advertising, deceptive trade practices, breach of contract, unfair competition, breach of fiduciary duty, unjust enrichment, and an accounting. Nor has Cost Cutting moved for summary judgment on these claims; instead, Cost Cutting moved to "dismiss" these counterclaims "pursuant to Federal Rule of Civil Procedure 12(b)(6)," on the basis that "[e]ach Counterclaim is based on the incorrect premise that the parties contractually agreed to certain limitations regarding Plaintiff's use of Defendants' Marks." (Cost Cutting Mem. (Dkt. 64-3) at 9-12.) PMAC objects to this motion on both substantive and procedural grounds, arguing first that Cost Cutting and Markowitz's use of the source code was unauthorized, and second that Cost Cutting's motion to dismiss is untimely because it already filed an answer.

The court has already explained that an issue of material fact exists as to whether Markowitz and Cost Cutting's use of the source code was unauthorized, so this substantive basis for "dismissal" or summary judgment is a nonstarter. Moreover, PMAC correctly notes that Cost Cutting's motion to dismiss is procedurally deficient. A 12(b)(6) motion to dismiss for failure to state a claim "must be made before [a] pleading," Fed. Civ. R. P. 12(b), and Cost Cutting and Markowitz already responded to PMAC's counterclaims and third-party claims by serving a reply. (Cost Cutting Answer; Markowitz Answer.) Therefore, their motion to dismiss fails as untimely. *See Moore v. Shahine*, 18-CV-463 (AT) (KNF), 2019 WL 948349, at *2 (S.D.N.Y. Feb. 27, 2019) ("[M]otions under Rule 12(b)(6) for failure to state a claim must be made before pleading if a responsive pleading is allowed. Once Defendant filed his answer on May 23, 2018, therefore, any subsequent motion to dismiss was untimely.").

At this point, Cost Cutting and Markowitz may file a new motion for summary judgment on PMAC's counterclaims to correct its procedural error. Such a motion could address the elements of each counterclaim and make legal arguments, citing specific cases, as to why those elements cannot be met. *See, e.g.*, *New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287 (S.D.N.Y. 2015) (granting summary judgment on deceptive practices and false advertising claims on the basis that "a party's claim that consumers will be confused, on its own, does not meet the threshold for liability"). Cost Cutting and Markowitz may file that motion, but need not. This case is ripe for settlement. At deposition, Michals indicated an openness to "a deal that those two accounts" would be "the property of us both right now still again." (Michals Dep. at 41:18-23.) Counsel for both parties agreed, on the record, that Michals's idea might "further[] a possible solution to the case." (*Id.* at 42:10-18.) And though Cost Cutting's brief noted that previous efforts to mediate the case were not entirely fruitful (*See* Cost Cutting Mem. at 12), the court is confident that an amicable settlement to this dispute should now be within reach.

## IV.  CONCLUSION

For the foregoing reasons, PMAC's motion for summary judgment on Cost Cutting's breach of contract claim is DENIED; PMAC's motion for summary judgment on Cost Cutting's unfair competition claim is DENIED; PMAC's motions for summary judgment on Cost Cutting's conversion and tortious interference with contract claims are GRANTED; PMAC's motion for summary judgment on its copyright infringement counterclaim and third-party claim is DENIED; Cost Cutting's cross-motion for summary judgment on its breach of contract claim is DENIED; and Cost Cutting's cross-motion to dismiss PMAC's counterclaims and third-party claims is DENIED.

The parties are directed to contact Magistrate Judge Steven Tiscione to discuss next steps in this litigation.

SO ORDERED.


Dated:      Brooklyn, New York
            March 31, 2022

                              Nicholas G. Garaufis
                              _____
                              NICHOLAS G. GARAUFIS
                              United States District Judge

24